UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHNNY ARELLANO,         )   1:07-cv-01597 OWW MJS HC
                           )
          Petitioner,   )   FINDINGS AND RECOMMENDATION
                           )   THAT PETITION FOR WRIT OF HABEAS
   v.                   )   CORPUS BE DENIED
                           )
JAMES E. TILTON, Director,   )
                           )
         Respondent.   )
_____)

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

I.   **PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Madera, following his conviction on July 7, 2003.  Petitioner was found guilty, on trial by jury, of transporting methamphetamine for sale, possessing methamphetamine for sale, possessing a controlled substance while armed with a loaded firearm, child endangerment, being a felon in possession of a firearm, carrying a loaded firearm, and being a active member of a criminal street gang. (Lodged Doc. No 26 at 286.) The jury also found Petitioner guilty of gang enhancements. Petitioner was sentenced to a term of twenty years and eight months in state prison. (Id.)

Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District

(hereinafter "Fifth DCA"). The Fifth DCA reversed the trial court's finding that Petitioner was an active member of a criminal street gang as a lesser included offense of carrying a loaded firearm, but otherwise affirmed the judgment and sentence. (LD[1] No. 8.)  Petitioner then filed a petition for review in the California Supreme Court. (LD No. 9.) On April 20, 2005, that petition was summarily denied. (LD No. 10.)

On March 26, 2006, Petitioner filed the first of three state habeas petitions with the Madera County Superior Court. (LD No. 11.) (Petitioner's first state habeas petition contains all the claims at issue in the present petition. Accordingly, Petitioner's subsequently filed petitions with the Superior Court are not relevant to the present petition.) The March 26, 2006, petition was denied on April 7, 2006. (LD No. 12.) On May 10, 2006, Petitioner asserted the same claims in a habeas petition filed with the Fifth DCA; it was denied without comment on May 12, 2006. (LD No. 17.) Petitioner filed a habeas petition with the  California Supreme Court on December 10, 2006; it too was denied without comment on October 10, 2007. (LD Nos. 22-23.)

Petitioner filed his original federal petition for writ of habeas corpus on October 30, 2007.  (Pet., ECF No. 1.) It was followed on February 4, 2009, by an amended petition identifying seven claims. (Am. Pet., ECF No. 28.) Respondent filed an answer to the amended petition on January 26, 2010. (Answer, ECF No. 40.) On June 6, 2009, Petitioner filed a traverse voluntarily withdrawing claims 1-2 and 5-6 of the amended petition. (Traverse, ECF No. 56,  at 8-9, and 18-19.) Accordingly, only claims three, four and seven remain at issue. Those claims raise the following grounds for relief:

Claim 3:  Ineffective assistance of both trial and appellate counsel inasmuch as the evidence presented at trial was insufficient to prove beyond a reasonable doubt that the transportation and possession of methamphetamine was for sale and committed on behalf of a criminal street gang within the meaning of penal code section 186.22(a)-(f);

Claim 4: Ineffective assistance of both trial and appellate counsel for failing to challenge

---

[1]"LD" refers to the documents lodged by Respondent with his response.

1  a "question of law", i.e., that "Norteno" as the name of a criminal street gang was a qualifying

2  "element" within the meaning of penal code section 186.22(a)-(f); and

3      Claim 7: Ineffective assistance of both trial and appellate counsel for not challenging

4  the trial court's failure to instruct the jury on essential element of criminal street gang, i.e., the

5  name of the group, thereby depriving Petitioner of a fundamentally fair trial. (Am. Pet.)

6  **II.**    **FACTUAL BACKGROUND**[2]

7  
8      On November 13, 2002, Giachino Chiaramonte, a Madera patrol officer, conducted a vehicle stop on a car that was speeding and had expired registration tags. Defendant was the driver of the vehicle. Defendant did not have a driver's license. He was placed under arrest and placed in the back of the patrol car. Defendant's wife, Mary, was in the passenger seat and defendant's four-year-old son was unrestrained in the back seat of the car.

10  
11      Officer Chiaramonte asked Mary to get out of the car. He told Mary that he was going to conduct a vehicle inventory search before impounding the vehicle. Chiaramonte saw a purse in the middle of the front seat. He asked Mary if the purse belonged to her; she said that it did. Chiaramonte asked Mary if he could search the purse and she gave him permission to search the purse.

13  
14      When Officer Chiaramonte opened the purse, he saw a gun on top of the purse. He also saw a pouch next to the gun. Chiaramonte asked Mary if the gun was loaded. She replied that she did not know. Chiaramonte asked her if she was sure and she said that probably it was loaded. Chiaramonte opened the pouch and found marijuana and a white rock substance. The gun was loaded.

16  
17      Officer Chiaramonte asked Mary where the gun was before it was in her purse. Mary told him that the gun and the pouch were on the seat of the car. When Chiaramonte pulled the car over, Mary put the gun and the pouch in her purse.

19      Continuing to search the car, Officer Chiaramonte found a pager on the driver's seat. The pager continually went off while Chiaramonte searched the car. Chiaramonte also found a blowtorch, condoms, and a bong under the driver's seat of the car. A pipe was found in the pouch in Mary's purse.

21  
22      Defendant asked Officer Chiaramonte what he was going to do with the torch. Chiaramonte told him that the torch would be booked into evidence. Defendant then said, "See, the torch shows you I'm not selling. I'm using the stuff."

24      The white substance in the pouch weighed 21.71 grams and was methamphetamine. According to the testimony of a police drug expert, Robert Blehm, the amount would be sufficient to provide over 200 doses. Blehm said that it was his opinion that the methamphetamine was possessed for purposes of sale.

27  
28      [2]The factual background is taken from the opinion of the state appellate court on direct appeal and is presumed correct. 28 U.S.C. § 2254(e)(1).

1
2
3
4

Jason Dilbeck testified as an expert on gangs. Dilbeck presented expert testimony to establish that the Nortenos are a criminal street gang. In addition, based on defendant's tattoos, moniker (street gang name), his prior admission of gang affiliations, and his activities, the expert concluded that defendant is an active member of the Norteno criminal street gang and committed the current crimes for the benefit of that gang.

5

**Defense**

6
7
8
9
10
11

Although defendant's wife Mary was a codefendant, she was called as a witness on defendant's behalf. She testified that she did not tell Officer Chiaramonte that he could look in her purse. Mary told Chiaramonte that the gun and the drugs belonged to her. In addition, Mary testified that the gun and the methamphetamine were hers and were in her purse when the car was pulled over. She said that she purchased the gun for her own protection because a man had been threatening to beat her. She testified that she loves defendant and she is not afraid of him. Mary said that defendant is not now a gang member and he did not know that she had a gun in her purse. Defendant and Mary were not living together at the time of the stop and he had come to pick her up. Mary uses methamphetamine.

12
13

Defendant's mother testified that defendant had been called Nay Nay (his moniker) since he was a small child. (LD No. 8 at 2-4.)

14   **III.   DISCUSSION**

15        **A.    Jurisdiction**

16   Relief by way of a petition for writ of habeas corpus extends to a person in custody

17   pursuant to the judgment of a state court if the custody is in violation of the Constitution or

18   laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams

19   v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his

20   rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out

21   of the Madera County Superior Court, which is located within the jurisdiction of this court.  28

22   U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

23        **B.    Legal Standard of Review**

24   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

25   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

26   enactment.  Lindh v. Murphy, 521 U.S. 320, 326, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997);

27   Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the

28   enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Under the AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7. Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Lockyer v. Andrade,  538 U.S. 63, 70-71 (2003).  Accordingly, Petitioner bears the burden of demonstrating that the state court's decision was either contrary to or an unreasonable application of federal law Woodford v. Visciotti, 537 U.S. 19, 24,(2002); Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although "AEDPA does not require a federal habeas court to adopt any one methodology," there are certain principles which guide its application. Lockyer, 538 U.S. at 71.

First, the AEDPA establishes a "highly deferential standard for evaluating state-court rulings." Woodford, 537 U.S. at 24. Determinations of factual issues made by state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1). Accordingly, when assessing whether the law applied to a particular claim by a state court was contrary to or an unreasonable application of "clearly established federal law," a federal court must review the last reasoned state court decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If a state court summarily denies a claim, the court "looks through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Conversely, de novo review, rather than AEDPA's deferential standard, is applicable to a claim that the state court did not reach on the merits. Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

1      Second, the court must ascertain whether relevant federal law was "clearly established"

2 at the time of the state court's decision. To make this determination, the Court may only

3 consider the holdings, as opposed to dicta, of the U.S. Supreme Court. See Williams v. Taylor,

4 529 U.S. at 412. In this context, Ninth Circuit precedent remains persuasive but not binding

5 authority for purposes of determining whether a state court decision is an unreasonable

6 application of Supreme Court Law. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

7      Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

8 "independent meanings." Bell v. Cone, 535 U.S. 685, 694 (2002). Under the "contrary to"

9 clause, a federal court may grant a writ of habeas corpus only if the state court arrives at a

10 conclusion opposite to that reached by the Supreme Court on a question of law, or if the state

11 court decides the case differently than the Supreme Court has on a set of materially

12 indistinguishable facts. Williams, 529 U.S. at 405. It is not necessary for the state court to cite

13 or even to be aware of the controlling federal authorities "so long as neither the reasoning nor

14 the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

15      Under the "unreasonable application" clause, the court may grant relief "if the state

16 court correctly identifies the governing legal principle…but unreasonably applies it to the facts

17 of the particular case." Bell, 535 U.S. at 694; Williams, 529 U.S. at 407-08. As the Supreme

18 Court has emphasized, a court may not issue the writ "simply because that court concludes

19 in its independent judgment that the relevant state-court decision applied clearly established

20 federal law erroneously or incorrectly." Williams, 529 U.S. at 411. Thus, the focus is on

21 "whether the state court's application of clearly established federal law is objectively

22 unreasonable." Bell, 535 U.S. at 694.

23 **IV.**    **REVIEW OF PETITION**

24      **A.**    **Procedural Default**

25      The California Supreme Court denied Petitioner's remaining claims on the ground that

26 they should have been raised on direct appeal. This procedural bar was set out by the

27 California court in In re Dixon, 41 Cal. 2d 756 (1953), and reaffirmed in In re Harris, 5 Cal. 4th

28 813 (1993). Because Petitioner filed his direct appeal in 2004, and thus according to the

California Supreme Court should have raised these claims at that time, this is a post-<u>Harris</u> default.

### 1.   Respondent's Initial Pleading Requirement

Under <u>Bennett</u>, the state must first "adequately ple[a]d the existence of an independent and adequate state procedural ground as an affirmative defense." <u>Bennett v. Mueller</u>, 322 F.3d 573, 586 (9th Cir. 2003). Respondent's initial burden is modest, and he is required only to plead the existence of a procedural bar that is applicable to the claims at issue. <u>See</u> <u>King v. LaMarque</u>, 464 F.3d 963, 967 (9th Cir. 2006). <u>See also</u> Rule 5, Rules Governing Section 2254 Cases in the United States District Courts (providing that a respondent's answer to a petition "must state whether any claim in the petition is barred by . . . a procedural bar.").

In the answer to the amended petition, Respondent identified each of Petitioner's claims as procedurally defaulted under <u>Dixon</u>. (Answer at 22, 29, and 35.) Respondent has therefore satisfied his initial burden of pleading the "affirmative defense" of a procedural bar for these claims. <u>Bennett</u>, 322 F.3d at 586.

### 2.   Petitioner's Interim Burden

Once the state properly pleads the existence of an independent and adequate procedural bar, the burden shifts to the petitioner to place that defense in issue, and "[t]his must be done, at a minimum, by specific allegations by the petitioner as to the adequacy of the state procedure. The scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner." <u>Bennett</u>, 322 F.3d at 584-85. In his traverse, Petitioner asserts that the Dixon procedural bar has not been consistently applied and is therefore inadequate. (Traverse at 7-8.) The Court agrees.

In <u>Ayala</u>, the district judge examined a post-<u>Harris</u> default. The judge held that the petitioner's interim burden was satisfied by the existence of other California district court cases finding inconsistent application of the <u>Dixon</u> rule after 1993. <u>Ayala v. Ayers</u>, 2008 U.S. Dist. LEXIS 31359, 2008 WL 1787317 at *6-7. The court first examined <u>Vaughn v. Adams</u>, No. CV-F-015241OWW DLB HC, 2006 U.S. Dist. LEXIS 37742, 2006 WL 1439400, *4 (E.D. Cal. May 22, 2006), adopted, 2006 U.S. Dist. LEXIS 43057, 2006 WL 1774915 (E.D. Cal. Jun 24,

1  2006). In <u>Vaughn</u>, the court considered a 1997 default. It found Petitioner's burden of showing

2  inadequacy satisfied by identifying five cases in which just months prior to the instant default,

3  the California Supreme Court summarily denied petitions without a citation to <u>In re Dixon</u>,

4  wherein claims that were not raised on direct appeal were raised on state habeas corpus.[3] The

5  <u>Ayala</u> court next examined <u>Monarrez v. Alameda</u>, No. SACV03-00104 AHM (MLG), 2005 U.S.

6  Dist. LEXIS 37876, 2005 WL 2333462 (C.D. Cal. Sept. 22, 2005), in which the date of the

7  default was January 2000. The Petitioner in <u>Monarrez</u> presented the court with a "survey of

8  210 non-capital habeas corpus petitions decided on December 21, 1999, just a month before

9  the date of the purported default, showing inconsistent application of the <u>Dixon</u> rule by the

10 California Supreme Court in that the <u>Dixon</u> bar was applied in only 19 cases, less than 10 per

11 cent of those decided." 2005 U.S. Dist. LEXIS 37876, 2005 WL 2333462 at *5. Unsurprisingly,

12 this showing satisfied the Petitioner's interim burden. Based on the cases examined by, and

13 the holdings of the courts in <u>Vaughn</u> and <u>Monarrez</u>, the <u>Ayala</u> court found the interim burden

14 of showing inadequacy of the <u>Dixon</u> rule satisfied. This Court finds no fault with the

15 conclusions in <u>Vaughn</u>, <u>Monarrez</u>, and <u>Ayala</u>. <u>See also</u> <u>Dennis v. Brown</u>, 361 F. Supp. 2d

16 1124, 1130-31 (2005) (petitioner shows inconsistent application of <u>Dixon</u> rule to meet burden

17 for a 1996 default); <u>Carpenter v. Ayers</u>, 548 F. Supp. 2d 736, 756-57 (2008) (relying in part

18 on <u>Dennis</u>, court finds <u>Dixon</u> rule inadequate to bar federal review).

19      Here again, Respondent has done nothing to show the <u>Dixon</u> rule was in fact

20 consistently applied. Furthermore, all of Petitioner's remaining claims are alleged to be claims

21 of ineffective assistance of counsel. As the <u>Dixon</u> rule does not apply to such claims, Petitioner

22 is not barred from proceeding with such claims in his federal petition. <u>In re Robbins</u>, 18 Cal.

23 4th 770, 814, n. 34 (1998). Accordingly, this Court shall consider the merits of claims denied

24 by the California Supreme Court based on <u>Dixon</u>.

25 ///

26

27      [3]The court in <u>Ayala</u> describes the petitioner in <u>Vaughn</u> as identifying fourteen cases. 2008 U.S. Dist. LEXIS 31359, 2008 WL 1787317 at *6. However, the court in <u>Vaughn</u> noted that the California courts decided nine of

28 those cases after the date of default, making them less relevant to a determination of the state of California law at the time of the petitioner's default. 2006 U.S. Dist. LEXIS 37742, 2006 WL 1439400 at * 4-5.

1

B.   **Ground Three - Ineffective Assistance of Counsel - Sufficiency of the Evidence Relating to Gang Enhancements**

2

3   Petitioner asserts that counsel was ineffective for failing to challenge the sufficiency of

4   the evidence supporting the finding of criminal street gang enhancement pursuant to California

5   Penal Code Section 186.22(b)(1).

6   1.   Standard for Ineffective Assistance of Counsel

7   The law governing ineffective assistance of counsel claims is clearly established for the

8   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

9   151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective

10   assistance of counsel, the Court must consider two factors.  Strickland v. Wahsington, 466

11   U.S. 668; 104 S. Ct. 2052; 80 L. Ed. 2d 674, 687(1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th

12   Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring

13   a showing that counsel made errors so serious that he or she was not functioning as the

14   "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner

15   must show that counsel's representation fell below an objective standard of reasonableness,

16   and must identify counsel's alleged acts or omissions that were not the result of reasonable

17   professional judgment considering the circumstances. Id. at 688; United States v. Quintero-

18   Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

19   highly deferential.  A court indulges a strong presumption that counsel's conduct falls within

20   the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; see also

21   Harrington v. Richter, 131 S.Ct. 770 (2011).

22   Second, the petitioner must demonstrate that "there is a reasonable probability that, but

23   for counsel's unprofessional errors, the result ... would have been different," Strickland, 466

24   U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive

25   defendant of a fair trial, one whose result is reliable.  Id. at 687.  The Court must evaluate

26   whether the entire trial was fundamentally unfair or unreliable because of counsel's

27   ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d

28   1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, the meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:   __

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 2011 U.S. LEXIS 912, *26-28 (2011).

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 29. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id.  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court

1   was so lacking in justification that there was an error well understood and comprehended in

2   existing law beyond any possibility for fairminded disagreement." Id. at 30.

3       Accordingly, even if Petitioner presents a strong case of ineffective assistance of

4   counsel,  this Court may only grant relief if no fairminded jurist could agree on the correctness

5   of the state court decision.

6                  2.   Standard for Insufficiency of the Evidence

7       The law on insufficiency of the evidence claim is clearly established. The United States

8   Supreme Court has held that when reviewing an insufficiency of the evidence claim on

9   habeas, a federal court must determine whether, viewing the evidence and the inferences to

10  be drawn from it in the light most favorable to the prosecution, any rational trier of fact could

11  find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443

12  U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined in state law. Id.

13  at 324, n. 16.

14                 3.   Analysis of the Claim

15      Petitioner claims there was insufficient evidence to prove that the charges of

16  possession and transport of drugs and related crimes benefitted a criminal street gang, as

17  defined in California Penal Code Section 186.22. This claim was presented to the Madera

18  County Superior Court, the California Court of Appeal, and the California Supreme Court by

19  way of post-conviction review petitions. The Madera County Superior Court found that

20  Petitioner could have, but did not, raise this claim on direct review. The California Court of

21  Appeal and the California Supreme Court summarily denied the claim, and it is presumed

22  these courts denied the claim on the same procedural ground identified by the Madera County

23  Superior Court. Ylst v. Nunnemaker, 501 U.S. at 803.

24      Petitioner has asserted in this claim that there was insufficient evidence to prove that

25  the transportation and possession of methamphetamine for sale was committed on behalf of

26  a criminal street gang. (Am. Pet. at 8.) Petitioner's argument is based on testimony from the

27  prosecution's gang expert that at least two other individuals, Alejandro Martinez and Moses

28  Peter McGuire, were members of the same gang  (thus qualifying the group as a  criminal

street gang). However, Petitioner contends that the expert only provided evidence that the other individuals were 'Nortenos', not 'Varrio West Side' gang members, the specific gang to which Petitioner was allegedly affiliated. Petitioner also asserts that the expert did not produce evidence that Varrio West Side existed as a criminal street gang as defined by the California Penal Code. Finally, Petitioner asserts that his counsel was ineffective in that he failed to investigate and discover and present evidence that Martinez and McGuire were not members of the Varrio West Side gang.

Gang enhancement applies to any felony that is committed "for the benefit of, at the direction of, or in association with any criminal street gang" and "with the specific intent to promote, further, or assist in any criminal conduct by gang members…." Cal. Penal Code § 186.22(b)(1). As further defined by California Penal Code § 186.22, a "criminal street gang" is "any ongoing organization" whose "primary activities" include the commission of one or more statutorily enumerated criminal acts (including transporting and possession of methamphetamine), and which is identified by a designed "common name or common identifying sign or symbol," and "whose members individually or collectively engage in…a pattern of criminal gang activity." Cal. Penal Code § 186.22(f). A "pattern of criminal gang activity" is defined, in turn, as "the commission…of two or more" statutorily enumerated crimes (such as attempted murder, discharging a firearm, or transporting methamphetamine), "committed on separate occasions, or by two or more persons," within three years of each other. Cal. Penal Code §186.22(e). The current charged offense may serve as one of the predicate offenses for purposes of establishing a pattern of criminal gang activity. People v. Gardeley, 14 Cal. 4th 605, 625 (1996).

In the instant case, there is ample evidence to satisfy the requisite elements for Petitioner's gang enhancement under California Penal Code Section 186.22. The majority of the prosecution's evidence regarding gang activity was provided by the prosecution's expert, Officer Dilbeck. He testified that Madera County has approximately 5,000 street gang members belonging to two primary gangs: the Nortenos and Surenos. (LD No. 27 at 2434, 2438, 2443.) Nortenos wear red and identify with the number 14 as it signifies "N" for "Nuestra

Familia." (LD No. 27 at 2446-47, 2461.) The Nortenos' activities consist of a "wide variety of crimes," ranging from murder, drug sales, rape, robbery, burglary, assault, and drive-by shootings. (LD No. 27 at 2458-59.)

Office Dilbeck testified that a "turf" is an area where gang members grew up, live or congregate and that one "turf" in Madera County is the "Varrio West Side territory," (LD No. 27 at 2445-46.) He further explained that "Varrio West Side" is "a clique or set of the whole" larger Norteno gang. (LD No. 27 at 2446.) There are other Norteno subsets in Madera County and throughout the state. (LD No. 27 at 2445-46, 2458.) Significantly, all of the cliques are a subset of the whole, i.e., the Norteno gang, and all affiliate with the number 14 and the Nuestra Familia. (LD No. 27 at 2446-47, 2456.)

Officer Dilbeck testified, that in his opinion, Petitioner was a member of the "Norteno" gang. (LD No. 27 at 2461.) One factor supporting his opinion was Petitioner's "West Side 14" tattoo located "across the top of his chest." (LD No. 27 at 2454.) "West Side" indicated Petitioner's claim to a particular "clique or subset," and the "14" signified Petitioner's "overall allegiance to the Nortenos as a whole." (LD No. 27 at 2455.) In addition, Petitioner repeatedly admitted to California prison officials that he was affiliated with the Norteno gang, dating back to 1995 and most recently in 2003. (LD No. 27 at 2462-65.) In May 1995, Petitioner and "another Norteno gang member" were "involved in a drive-by shooting against two rival Sureno gang members." (LD No. 27 at 2466.) Petitioner was specifically identified by the Sureno victims as a "Varrio West Side gang member." (LD No. 27 at 2466.) In March 2002, Petitioner was spotted carrying a red bandana, which is a sign commonly displayed by Norteno gang members. (LD No. 27 at 2467-68.) Then, in February 2003, Petitioner was hanging out with other Norteno gang members in the Varrio West Side territory when a rival Sureno snuck up and fired twenty rounds from an automatic weapon. (LD No. 27 at 2471-73.) Immediately after the shooting commenced, Petitioner "dove" into his car, which was subsequently found to contain a firearm and methamphetamine. (LD No. 27 at 2473.) Petitioner was also contacted by police while in the presence of Jessie Candilla, a known "Varrio West Side gang member" with a high stature as a "larger drug dealer[ ]." (LD No. 27 at 2475-76.) Finally, Petitioner was

jumped by some Surenos while in the company of another gang member wearing red clothing. (LD No. 27 at 2475.)

Based on this information, Officer Dilbeck opined that Petitioner was a "hard-core" member "in the Norteno street gang." (LD No. 27 at 2476-77.) Officer Dilbeck also believed that Petitioner committed the charged offenses for the benefit of the Norteno gang. (LD No. 27 at 2474, 2480.) As he explained, "by doing those types of violent acts you are actually in essence making it easier for other members of your gang to do criminal activity." (LD No. 27 at 2478.) Also, the proceeds of drug sales are used to finance more criminal operations and provide income to the Norteno members, including those incarcerated. (LD No. 27 at 2474.) As for carrying a firearm, it enables the member to control his "turf or territory…from rival gang members who may enter their territory." (LD No. 27 at 2482.) It additionally discourages local citizens from reporting the gang's criminal activity by instilling a fear of retaliation. (LD No. 27 at 2478-79, 2483.)

Officer Dilbeck described an offense committed by Alejandro Martinez, whom he identified as a Norteno gang member from Madera. (LD No. 27 at 2450.) Martinez was convicted in 2001 for discharging a firearm (Cal. Penal Code § 246). (LD No. 27 at 2450-51.) Officer Dilbeck also referred to another offense committed by Moses Peter McGuire, whom he identified as another Norteno gang member from Madera. (LD No. 27 at 2451-52.) McGuire was convicted in 2001 of attempted murder and transportation of methamphetamine. (LD No. 27 at 2451-52.)

Accordingly, the prosecution provided significant evidence regarding Petitioner's involvement in the Norteno gang and to prove the elements required for finding a criminal street gang enhancement. The evidence presented by the expert witness functions as strong circumstantial evidence from which the jury could readily infer that Petitioner committed the charged offenses "for the benefit of,…or in association with" the Norteno gang" and that he did so "with the specific intent to promote, further, or assist" his fellow Nortenos engage in other criminal conduct. Cal. Penal Code § 186.22(b)(1); see also People v. Romero, 140 Cal. App. 4th 15, 18 (2006) (explaining that § 186.22 enhancement may be proven with expert testimony

1    about criminal street gangs).

2        Petitioner points to several bases for concluding the evidence is insufficient to show that

3    his actions were associated with or benefitted a street gang. First, Petitioner asserts that the

4    prosecution failed to prove that the other individuals referenced by the expert, Martinez and

5    McGuire, were Varrio West Side gang members or that Varrio West Side existed as a criminal

6    street gang. (Pet. at 8.) Petitioner's claims lack merit.  The prosecution need not prove what

7    subset of a criminal street gang was involved.  In People v. Ortega, 145 Cal.App.4th 1344,

8    1356-57 (2006), the California Court of Appeal addressed this issue with regard to the Norteno

9    street gang, the same gang in which Petitioner was allegedly involved. The Court held that the

10   prosecution need not prove which subset of the gang is involved when there is evidence that

11   members, regardless of subset, act in concert for the same goals. Specifically the court stated,

12       Detective Aurich testified there were thousands of Norteño gang members in the
         Sacramento area, and 20 to 25 subsets of Norteños. We reject defendant's
13       assertion that the prosecution had to prove precisely which subset was involved
         in the present case. No evidence indicated the goals and activities of a particular
14       subset were not shared by the others. There was sufficient evidence that
         Norteño was a criminal street gang, that the murder was related to activity of that
15       gang, and defendant actively participated in that gang. There is no further
         requirement that the prosecution prove which particular subset was involved
16       here. As stated in [People v. Valdez 58 Cal.App.4th 494, 506–507 (1997),
         "gangs are not public and open organizations or associations like the YMCA or
17       State Bar Association, which have a clearly defined and ascertainable
         membership. Rather, gangs are more secretive, loosely defined associations of
18       people, whose involvement runs the gamut from 'wannabes' to leaders.
         Moreover, determining whether someone is involved and the level of
19       involvement is not a simple matter and requires the accumulation of a wide
         variety of evidence over time and its evaluation by those familiar with gang
20       arcana in light of pertinent criteria." (Fn. omitted.) In this case there was
         testimony that it was not uncommon for members of different gangs to work in
21   concert to commit a crime. In light of the nature of gang structure and the apparent willingness
     of members to work with other gangs to commit crimes, requiring the prosecution to prove the
22   specific subset of a larger gang in which a defendant operated would be an impossible, and
     ultimately meaningless task.

23

24   Ortega, 145 Cal. App. 4th at 1356-1357.

25       On the other hand, a California Court of Appeal found that there was insufficient

26   connection between different factions of a white supremacist gang organization.  In People v.

27   Williams, 167 Cal.App.4th 983, 987-88 (2008), the court found that the factions of the

28   Peckerwood gang shared a common name and ideology with other Peckerwood factions, but

that there was a lack of organization within the gang and that different factions did not necessarily know the activities of other factions within the gang. Id. The distinction drawn by the Williams court is instructive. Here, the same expert who testified in Williams that the Peckerwood factions were loosely organized, testified that the Nortenos is a more structured and organized criminal street gang. Specifically, the expert testified that due to inner struggles between factions, the Nuestra Familia, the prison gangs associated with the Nortenos, sent out CD's to remind Norteno members of their affiliation to the gang as a whole and prevent further disruption to the income created by gang activity. (LD No. 27 at 2456-57.) Based on the testimony of the prosecution expert, sufficient testimony existed to show that Petitioner need only be found a member of the Nortenos not any specific subset.

In addition to providing sufficient evidence to show that the Nortenos operate as a criminal street gang, the prosecution provided evidence that Petitioner was affiliated with the Nortenos. The expert described Petitioner as being a 'hard-core' member based on many factors, including Petitioner's gang related tattoos and Petitioner's statements of his gang affiliation as a Norteno when in prison.

Petitioner also asserts that thee was insufficient evidence to show that the other alleged gang members, Martinez and McGuire, were Varrio West Side gang members. However, as noted, the prosecution need only show that Petitioner and others were members of the greater Norteno gang. As Petitioner's claim is premised on a finding that he and the other individuals must be shown to be members of the Varrio West Side gang and such inquiry is not relevant, his claim of insufficient evidence fails.

In his traverse, Petitioner also claims that there was insufficient evidence to show that he possessed the specific intent to act in the benefit of the gang while committing the offense. (Traverse at 13.) Petitioner bases his claim on People v. Ramon 175 Cal.App.4th 843 (2009), which held that the expert witness only speculated that the defendants acted with specific intent to promote, further, or assist criminal conduct of gang members by stealing a vehicle. However, the court stated that the analysis "might be different if the expert's opinion had included 'possessing stolen vehicles' as one of the activities of the gang." Ramon, 175 Cal.

App. 4th at 853.  In the present case, the Petitioner committed crimes relating to the possession and transport of drugs.  The expert witness testified that drug sales were a primary activity of the gang, and that the sale of drugs helped the gang financially.

With regard to the sufficiency of the evidence to support a gang enhancement under section 186.22, the Ninth Circuit has recently held:

> California law requires the prosecutor to prove two things. First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang." Cal. Penal Code § 186.22(b)(1). Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Id. We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone.

Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing Garcia v. Carey, 395 F.3d 1099, 1102-1103 & n.9 (9th Cir. 2005). In Briceno, the gang expert testified in terms of "generalities" that the crimes could glorify the gang, but did not provide direct or circumstantial evidence regarding the defendant's specific intent. Briceno, 555 F.3d at 1078. In such circumstances, the Ninth Circuit held the expert testimony did not establish the petitioner's specific intent in committing the crimes. Id. at 1078-1079. This was particularly so in Briceno because the defendant submitted proof of a different motivation, i.e. personal gain.

Subsequent to Garcia v. Carey, California courts have held that section 186.22's specific intent element does not require a showing of intent to enable or assist criminal activities aside from the offense charged; the intent to commit the gang related offense suffices. See e.g., People v. Hill, 142 Cal.App.4th 770, 774 (2006); People v. Romero, 140 Cal.App.4th 15, 19-20 (2006); People v. Vazquez, 178 Cal.App.4th 347, 353-354 (2009). Because of the conflict, the Ninth Circuit recently asked the California Supreme Court to decide the question of state law. Emery v. Clark, 604 F.3d 1102 (9th Cir. 2010). On June 23, 2010, the California Supreme Court granted the request for certification and deferred further action pending consideration of a related issue in People v. Albillar, 162 Cal.App.4th 935 (2008). On December 20, 2010, the California Supreme Court issued its decision in Albillar and rejected the Ninth Circuit's reasoning in Garcia and Briceno finding "[t]here is no statutory

requirement that this 'criminal conduct by gang members' be distinct from the charged offense, or that the evidence establish specific crimes the defendant intended to assist his fellow gang members in committing." (Citations omitted). People v. Albillar, 51 Cal.4th 47, 2010 WL 5140768 *13 (2010). Therefore, the California Supreme Court has specifically interpreted its law contrary to the interpretation in Briceno and Garcia, and such rulings are inoperative.

As there is no requirement that the prosecution prove intent to benefit the gang, Petitioner's claim that sufficient evidence did not support such a conclusion is not relevant. Substantial evidence supports Petitioner's multiple gang enhancements. When viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 at 319. Accordingly Petitioner's sufficiency of the evidence claim fails.

Moreover, Petitioner's counsel was not ineffective in failing to pursue a contrary argument. See Strickland, 466 U.S. at 688-94; Harrington v. Richter, 131 S.Ct. 770, 2011 U.S. LEXIS 912, *26-28. Petitioner has asserted that counsel should have presented evidence that Petitioner did not know the other Norteno gang members described by the prosecution expert and that Petitioner did not have the specific intent required to be found guilty of the gang enhancements.  However, the prosecution need not prove that Petitioner personally knew the other gang members or that he had the  specific intent to commit the crimes for the benefit of the gang.  Petitioner was not prejudiced by his counsel's failure to present such arguments to the jury, and his ineffective assistance of counsel claim lacks merit.

### C. **Ground Four - Ineffective Assistance of Counsel - Sufficiency of the Evidence Relating to 'Norteno' as the Name of a Gang**

Petitioner asserts that counsel was ineffective for failing to challenge the sufficiency of the evidence, necessary  to prove criminal street gang enhancement, that 'Norteno' qualifies as the name of a gang pursuant to California Penal Code Section 186.22.

A criminal street gang is defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the

1  commission of one or more of [certain enumerated] criminal acts . . ., having a common name

2  or common identifying sign or symbol, and whose members individually or collectively engage

3  in or have engaged in a pattern of criminal gang activity." Cal. Penal Code § 186.22(f); People

4  v. Sengpadychith, 26 Cal.4th 316, 323 (2001).

5          Here, Petitioner claims that Norteno is not the name of a gang, but only describes a

6  geographic region, and the prosecution did not prove that he was a member of the Varrio West

7  Side subset.  Defendant relies on People v. Valdez 58 Cal.App.4th 494, 499 n.2 (1997), noting

8  that in Valdez the California Court of Appeal stated, "Norteño and Sureño are not the names

9  of gangs," and merely identify gangs located either in Southern or Northern California.

10 However, as described above, in People v. Ortega, 145 Cal.App.4th 1344, 1356-57 (2006),

11 the California Court of Appeals later determined that the expert witness testimony presented

12 in that case was sufficient to prove that Nortenos was a criminal street gang. See also In re

13 Jose P., 106 Cal. App. 4th 458, 467 (2003) ("Valdez does not hold that there is no criminal

14 street gang called Norteno."). As later California cases have shown that Norteno can be and

15 has been found to be the name of a criminal street gang, Petitioner's claim based on Valdez

16 fails.

17         Petitioner also claims that he does not personally know the other members described

18 by the expert as Norteno gang members in Madera County.  However, California Penal Code

19 Section 186.22(f) defines a criminal street gang as a group of three or more persons engaged

20 in certain criminal acts and using common name, sign or symbol.  The statute does not require

21 personal knowledge of the specific identity of others in the gang.  In the present case, the

22 expert testified that in addition to the Varrio West Side subgroup there were other subgroups

23 of the Norteno gang in Madera County and throughout California. As the expert testified that

24 the various subgroups are organized and work in concert, it is possible that the Norteno

25 members that the expert discussed belonged to other subgroups, but were members of the

26 Norteno gang nonetheless.  Penal Code Section 186.22(f) does not require knowledge of the

27 identity of other members of the criminal street gang. Petitioner's claim lacks merit.

28         When viewing the evidence and the inferences to be drawn from it in the light most

U.S. District Court
E. D. California

favorable to the prosecution, any rational trier of fact could find, beyond a reasonable doubt, that the Norteno gang met the elements to be considered a criminal street gang. Jackson v. Virginia, 443 U.S. 307 at 319. Accordingly Petitioner's sufficiency of the evidence claim fails.

Petitioner's counsel was not ineffective for failing to pursue a contrary argument. See Strickland, 466 U.S. at 688-94; Harrington v. Richter, 2011 U.S. LEXIS 912, at *26-28. While Petitioner claims ineffective assistance of counsel, he does not specify what action his counsel should have taken that would have changed the result.   Strong evidence was presented regarding the existence of the Norteno street gang, and it is not likely that Petitioner's counsel, even if attempting to object to the testimony, could have prevented it from being admitted. Accordingly, Petitioner's ineffective assistance of counsel claim also fails.

D.  **Ground Seven - Ineffective Assistance of Counsel - Failure to Challenge the Court's Failure to Instruct Jury Regarding the Name of the Gang**

Petitioner asserts that counsel was ineffective for not challenging the court's failure to properly instruct the jury regarding a criminal street gang under California Penal Code Section 186.22.

1.  Standards Regarding Instructional Error

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

Even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507

1   U.S. 619, 637 (1993) ("The test . . . is whether the error had substantial and injurious effect

2   or influence in determining the jury's verdict." (citation and internal quotation marks omitted)).

3   See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that

4   an erroneous instruction was so prejudicial that it will support a collateral attack on the

5   constitutional validity of a state court's judgment is even greater than the showing required to

6   establish plain error on direct appeal." Id. Where "no erroneous instruction was given[,]" a

7   petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction,

8   is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S.

9   at 155.

10                  2.       Analysis of the Claim

11      In his petition, Petitioner discusses the jury instructions given during trial relating to

12   finding a criminal street gang enhancement under California Penal Code Section 186.22(a).

13   However, Petitioner's only objection to the jury instructions is that they do not identify the name

14   of the criminal street gang. Petitioner contends that the jury instructions were improper

15   because the jury could find Petitioner to be a member of the Norteno gang or the Varrio West

16   Side gang.  Petitioner further contends that Norteno is not the name of a criminal street gang,

17   and that the prosecution has not proven that Varrio West Side meets the elements of a

18   criminal street gang.

19      To the extent that Petitioner is again claiming that Norteno is not a criminal street gang

20   based on People v. Valdez, 58 Cal. App.4th at 499 n.2, such claim is without merit for the

21   reasons discussed above. Further, in his traverse, Petitioner alleges that the prosecution

22   presented insufficient evidence to find the criminal street gang enhancement. (Traverse at 19-

23   24.) Such allegations do not raise issues regarding the jury instructions and were already

24   addressed with regard to claims three and four.  Accordingly, claims relating to the sufficiency

25   of the evidence or whether or not Norteno is the name of a gang do not warrant further

26   discussion here.

27      Petitioner claims that the jury instructions deprived him of adequate due process by

28   failing to instruct the jury regarding the name of the criminal street gang. During trial, the jury

was given several instructions, including the following regarding criminal street gangs:

> "Criminal street gang" means any ongoing organization, association, or group of three or more persons, whether formal or informal, (1) having as one of its primary activities the commission of one or more of the following criminal acts, unlawful discharge of a firearm…, attempted murder …, or transportation of methamphetamine…, (2) having a common name or common identifying sign or symbol and (3) whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity. (LD No. 26 at 216.)

In reaching a verdict, the jury found Petitioner guilty of the criminal street gang enhancements, and expressly identified Norteno as the particular gang that benefitted by Petitioner's criminal offenses (LD No. 26 at 239-43, 246, 249, 251, 254, and 256.) Petitioner does not claim that the instructions were vague, or so prejudicial that it creates questions as to the constitutional validity of the state court judgment.  Petitioner's argument hinges on the premise that Norteno is not a criminal street gang, and therefore the finding was improper. Petitioner's claim lacks merit.  As discussed, California courts have considered Norteno a criminal street gang.  Further, while the jury instruction does not specify the name of the criminal street gang, Petitioner does not present any persuasive argument as to why the instruction was erroneous. With such instructions,and the evidence presented at trial, the jury concluded that Petitioner committed the offenses for the benefit of the Norteno gang. Petitioner's instructional error claim only restates his claim that there is insufficient evidence to be found guilty of the criminal street gang enhancement as Norteno is not a gang. Petitioner has not shown that he has suffered any prejudice resulting from the omission of the name of the specific street gang in the jury instruction.  He is not entitled to relief on this ground.

Petitioner further claims that counsel was ineffective for failing to object to the jury instruction.  However, even if the jury instruction did include the name of the specific gang, in this case the 'Nortentos', Petitioner has not shown that the result would have been any different. Petitioner's counsel's conduct was reasonable in not objecting to the jury instruction, and Petitioner did not suffer any prejudice from counsel's action.  Accordingly, Petitioner's ineffective assistance of counsel allegations fail with regard to this claim.  See Strickland, 466 U.S. at 688-94; Harrington v. Richter, 2011 U.S. LEXIS 912, at *26-28. As such, Petitioner is not entitled to relief.

1    V.      **RECOMMENDATION**

2          Accordingly, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas

3    corpus be DENIED WITH PREJUDICE. It is FURTHER RECOMMENDED that the Clerk of

4    Court be DIRECTED to enter judgment.

5          This Findings and Recommendation is submitted to the assigned District Judge,

6    pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within forty (40) days after being

7    served with the Findings and Recommendation, any party may file written objections with the

8    Court and serve a copy on all parties.  Such a document should be captioned "Objections to

9    Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be

10   served and filed within ten (10) days after service of the objections.  The parties are advised

11   that failure to file objections within the specified time may waive the right to appeal the District

12   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14

15   IT IS SO ORDERED.

16   Dated:    February 28, 2011          /s/ Michael J. Seng
17                                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28